## A00A0614. SUMMEROUR v. THE STATE.
### (530 SE2d 494)

JOHNSON, Chief Judge.

A jury found Don Summerour guilty of aggravated sodomy, child molestation and statutory rape. He appeals from the convictions entered on the jury verdict. We affirm.

Viewed in a light most favorable to support the jury's verdict, the evidence shows that in September 1993, the ten-year-old victim joined a church youth group led by Summerour. Summerour held the victim's hand, bought her presents and kissed her on the mouth. From September 1993 through July 1994, Summerour made the victim play the "foot game." During this game, Summerour removed the victim's shoe, placed her foot on his genital area and rubbed his genital area with the child's foot for a couple of minutes, causing his penis to become "harder." Summerour showed the victim what appeared to be a gun and repeatedly threatened to kill himself if she told anyone about the "foot game."

On October 31, 1993, the youth group met at the church to set up a haunted house. During the evening, Summerour took the victim to

---

213 Ga. App. 822 (1) (446 SE2d 250) (1994).

[6] *Hatcher*, supra.

his house, where they were alone. The victim stood in the living room while Summerour disappeared into his room. When Summerour returned to the living room, he held a jar of Vaseline and told the victim to pull down her pants. Afraid and not knowing what to think, the victim pulled down her pants. Summerour ordered the victim to face the couch, kneel down and pull down her underwear. He then knelt down behind her and placed his penis inside her rectum. Summerour moved his body back and forth, refusing to stop even when the victim told him it hurt and asked him twice to stop. After finishing, Summerour took the victim back to the church. The victim did not tell anyone because she was scared "because [Summerour] kept threatening to kill himself." According to the victim, Summerour had previously threatened to kill himself if she did not stop talking to other boys.

On July 19, 1994, the victim's parents asked Summerour to take the victim to a doctor's appointment. After the appointment, Summerour took the victim to her home. Finding no one home, Summerour removed a lawn chair from the porch and placed it in the garage. He sat on the lawn chair and told the victim to pull her pants down and close her eyes. Because he continued to threaten to kill himself, the victim did as she was told. Summerour unzipped his pants and told the victim to sit on top of him. He held her arm and guided her as she got on top of him. While the victim was on top of him, Summerour placed his penis in her vagina. After approximately one minute, Summerour stopped and told the victim he would wait until she started her period. Although her eyes were closed the entire time, the victim was certain that what she felt touch her vagina was not a hand.

1. Summerour contends the evidence was insufficient to support his conviction for aggravated sodomy because the state failed to prove the essential element of force. We disagree.

A person commits the offense of aggravated sodomy when he commits sodomy with force and against the will of the victim.[1] There is no presumption of force merely because the victim is underage; the state must prove the essential element of force.[2] However, the quantum of evidence necessary to prove force against a child is minimal.[3] The element of force is shown "if the defendant's words or acts were sufficient to instill in the victim a reasonable apprehension of bodily harm, violence, or other dangerous consequences to herself or others."[4]

Contrary to Summerour's contentions, the record in this case

---

[1] OCGA § 16-6-2 (a).

[2] *Brewer v. State*, 271 Ga. 605, 606-607 (523 SE2d 18) (1999).

[3] Id. at 607; *State v. Collins*, 270 Ga. 42, 44-45 (508 SE2d 390) (1998).

[4] (Punctuation and footnote omitted.) Id.; *Brewer*, supra at 608.

contains sufficient evidence that the victim was forcibly sodomized by Summerour. According to the victim, she did what Summerour ordered her to do because she was afraid. The victim testified that Summerour placed his penis in her rectum and began moving back and forth. She told Summerour "it hurt" and asked him to stop at least two times, but he would not. This testimony, in and of itself, is sufficient evidence of force to support Summerour's conviction for aggravated sodomy.[5] Nonetheless, the state provided additional evidence of force through the victim's testimony that she complied with Summerour's orders and did not tell anyone about his actions "because [Summerour] kept threatening to kill himself."[6] The evidence was sufficient for a rational trier of fact to find Summerour guilty beyond a reasonable doubt of aggravated sodomy under *Jackson v. Virginia*.[7]

2. The trial court did not err in denying Summerour's motion for a mistrial. According to Summerour, his character was impermissibly placed in evidence when the victim testified that sometime between September 1993 and July 1994 she heard Summerour tell her 12-year-old brother that Summerour would kill him if he ever hurt the victim. We disagree.

It is well established that if evidence is relevant and material to the issues being tried, it is not inadmissible merely because it may incidentally place the defendant's character in issue.[8] "Lack of resistance, induced by fear, is force, and may be shown by the [victim's] state of mind from her experience with [Summerour] and subjective apprehension of danger from him."[9] Since force is an essential element of aggravated sodomy, the victim's testimony regarding Summerour's violence in the form of threats to himself and others and the victim's fear of him was relevant and admissible.[10]

Summerour argues that this threat could not go to the issue of force during the aggravated sodomy because it occurred after the October 31, 1993 aggravated sodomy. This argument misconstrues the evidence. The victim testified that the threat occurred sometime between September 1993 and July 1994. Her brother testified that he guessed the threat was made "probably around the middle" of his relationship with Summerour. Defense counsel asked if the middle was around March or April 1994, and the victim's brother responded, "maybe." This conflict in the evidence was for the jury to resolve. The

---

[5] *Casey v. State*, 237 Ga. App. 461, 462-463 (3) (515 SE2d 429) (1999).

[6] *Collins*, supra.

[7] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[8] *Calloway v. State*, 199 Ga. App. 272-273 (1) (404 SE2d 811) (1991) (showing force based on victim's fear due to defendant's "fights and fusses" with victim's mother).

[9] (Citations and punctuation omitted.) Id.

[10] *Collins*, supra at 45; *Calloway*, supra at 272.

victim's testimony clearly leaves open the possibility that the jury could have found that Summerour's threat to her brother was made before he sexually assaulted her on October 31, 1993.

In addition, even if this threat did impermissibly place Summerour's character into issue, it is highly probable that this error did not contribute to the jury's verdict. Although evidence of Summerour's guilt was not overwhelming, we are satisfied that, excluding the victim's testimony of the threat to her brother, there remains sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that Summerour was guilty of the charged offenses.[11]

3. Summerour contends he was denied effective assistance of counsel because his trial counsel (1) failed to call several witnesses that would have testified to Summerour's good character, (2) waived the right to an indictment by a grand jury and (3) failed to maintain a theory of defense. Because Summerour failed to present any evidence supporting his contentions during the hearing on his motion for new trial, this enumeration of error lacks merit.

It is well established that the party alleging ineffective assistance of counsel has the burden of establishing that trial counsel's performance was deficient and that the deficient performance prejudiced the defense.[12] In addition, the defendant must overcome the strong presumption that trial counsel's conduct fell within the broad range of reasonable professional conduct.[13] In the absence of testimony to the contrary, trial counsel's actions are presumed strategic.[14]

At the hearing on the motion for new trial, Summerour's new counsel argued that Summerour was denied effective assistance of trial counsel. However, neither Summerour's trial counsel nor any other witness, including Summerour, testified at the hearing on the motion for new trial. Thus, Summerour made no affirmative showing that the purported deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy.[15]

Inasmuch as Summerour failed to establish that any aspect of his trial counsel's performance was deficient and that the deficiency was prejudicial, the trial court did not err in concluding that Summerour was not deprived of the effective assistance of counsel at trial.

---

[11] *Butler v. State*, 178 Ga. App. 110, 113 (4) (342 SE2d 338), rev'd on other grounds, *State v. Butler*, 256 Ga. 448 (349 SE2d 684) (1986).

[12] *Rivers v. State*, 271 Ga. 115, 117 (2) (516 SE2d 525) (1999).

[13] *McClarity v. State*, 234 Ga. App. 348, 350 (3) (506 SE2d 392) (1998).

[14] *Hamilton v. State*, 238 Ga. App. 320, 322 (3) (517 SE2d 118) (1999).

[15] Id. at 321.

4. The trial court did not err in denying Summerour's motion for a directed verdict of acquittal on the statutory rape charge as there was sufficient evidence for a rational trier of fact to find Summerour guilty beyond a reasonable doubt of this charge. Summerour's claim that insufficient evidence of penetration existed lacks merit.

In Georgia, the penetration of the female sexual organ by the male sexual organ, which is necessary to constitute rape, need be only slight and may be proved by indirect or circumstantial evidence; it is not necessary that the vagina is entered or the hymen is ruptured, but an entering of the anterior of the organ is sufficient.[16]

The victim testified that Summerour told her to pull down her pants and sit on top of him. He unzipped his pants and put his penis in her vagina. After one minute he stopped and told her he would wait until she started her period. Although the victim had her eyes closed, she testified that the object that touched her vagina was not a hand. This testimony presented sufficient evidence of penetration to allow a rational trier of fact to find Summerour guilty beyond a reasonable doubt of statutory rape.[17]

*Judgment affirmed. McMurray, P. J., and Phipps, J., concur.*

DECIDED MARCH 3, 2000.

*Dennis C. O'Brien*, for appellant.
*Robert E. Keller, District Attorney, Verda Andrews-Stroud, Lalaine A. Briones, Assistant District Attorneys*, for appellee.

---

[16] *Spruell v. State*, 237 Ga. App. 448, 449 (1) (514 SE2d 896) (1999); *Ortiz v. State*, 222 Ga. App. 432 (1) (474 SE2d 300) (1996).
[17] *Spruell*, supra; *Richie v. State*, 183 Ga. App. 248 (1) (358 SE2d 648) (1987).