## S12A1909. BROWN v. THE STATE.

(738 SE2d 591)

NAHMIAS, Justice.

Linda Brown appeals from her conviction for the malice murder of her three-year-old son, Garry Brown. Appellant contends that the evidence at trial was insufficient to support her conviction and that her trial counsel provided constitutionally ineffective assistance by failing to call a medical expert to testify in her defense. We affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence showed the following. On the morning of August 10, 2004, Garry, who had been in Appellant's sole care for several days, was taken from his home to a hospital by paramedics after suffering a head injury that rendered him non-responsive. A CAT scan revealed that he had a subdural hemorrhage on the right side of his brain that was causing serious swelling and shifting of the brain, an injury typically caused by trauma. Garry also had numerous bruises and scars, several of which were in suspicious locations, such as the inner arm, and one which resembled a human bite mark.

Appellant told the paramedics and hospital personnel that she saw Garry walk from his bedroom to the living room that morning and that he had not fallen that morning or in several days. She later offered as an explanation for Garry's injury that he had fallen from a sofa and bumped his head at his aunt's house five days before his hospitalization; his aunt said that she treated the bump with ice and Garry appeared fine.

By the next morning, August 11, Garry's condition was improving, and he was moved from a regular hospital bed to a crib for safety reasons. Despite multiple members of the medical staff repeatedly advising Appellant to keep the side rails of the crib raised, she continually lowered at least one of them. One nurse explained to Appellant that Garry could suffer fatal head injuries if he fell out of the crib; Appellant nevertheless lowered the side rail numerous times after this discussion.

Around noon that day, Garry fell out of his crib. A nurse sitting nearby heard a loud "bam" come from Garry's room and ran in to find

---

[1] The victim died on August 12, 2004. On May 10, 2005, Appellant was indicted by a Bibb County grand jury for malice murder and felony murder, and a trial jury found her guilty on both counts on February 9, 2006. The felony murder conviction was vacated by operation of law, and the trial court sentenced Appellant to life in prison on the malice murder conviction on February 17, 2006. Trial counsel filed a timely motion for new trial, and Appellant later obtained new appellate counsel, who filed an amended motion for new trial on October 19, 2011. The motion was denied on December 12, 2011, and Appellant then filed a notice of appeal. The appeal was docketed to the September 2012 term of this Court and submitted for decision on the briefs.

Appellant lifting the child off the floor. A side rail on the crib was down. Appellant gave inconsistent stories to medical personnel and the police regarding how Garry fell from the crib, and she initially claimed that she had caught him before he hit the floor. As a result of the second fall, Garry's brain again swelled and he became comatose. Despite emergency neurosurgery, Garry died the next day.

At trial, the State's medical experts testified that a fall from a sofa, particularly a fall occurring five days before Garry's hospitalization, was inconsistent with his initial brain injury, which also would not have permitted him to walk from one room to another on the morning he was found unresponsive. One expert explained that Garry's blood appeared "fresh" — white and dense — on his CAT scan, indicating that the brain injury had occurred within one to three days. Based on the severity of the initial injury, the doctor concluded that it occurred within a day of Garry's hospitalization and that he would have immediately shown symptoms. Garry's neurosurgeon testified that the child's first injury alone might have eventually caused his death, his second fall alone almost definitely would not have caused a fatal injury, and the combination of the two impacts caused his death. The experts were vigorously cross-examined but did not alter their opinions.

With the paramedics and throughout Garry's hospitalization, Appellant did not express concern about Garry's condition, did not want to speak to or touch him, and did not ask questions that parents of children in intensive care typically ask. When Garry became responsive on August 11, he would scream when nurses attempted to have Appellant hold him and preferred to be with the nurses or his aunt. Appellant did not visit him after his emergency surgery, and she was not present when his life support was removed. The State also presented evidence from Appellant's neighbors that she had verbally and physically abused Garry in the past.

At trial, defense counsel called a private investigator to explain that the neighbors could not have heard what they claimed to hear through thick apartment walls. Appellant's brother testified that the neighbors disliked Appellant and that Appellant, who was a special education student who only finished the ninth grade, did not generally show emotion, did not cry at her mother's funeral, and did not outwardly grieve when her father and brother died. Appellant's brother and sister also explained that Appellant often needed things explained to her multiple times before she understood. In addition, defense counsel called Garry's pediatrician, who testified that Appellant appropriately cared for Garry, bringing him in for regular vaccinations and check-ups. The pediatrician had seen Garry 19 times since his birth and had never noticed signs of child abuse.

Appellant also testified, claiming that she did show concern for Garry at the hospital and was not negligent with regard to his fall from the crib.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to reject Appellant's accident defense and to find her guilty beyond a reasonable doubt of the crime for which she was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that her trial counsel was constitutionally ineffective in deciding to challenge the State's expert witnesses through cross-examination rather than by calling a defense expert to refute their testimony. To prevail on this claim, Appellant must show both that her trial counsel provided deficient performance and that, but for that unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984); *Long v. State*, 287 Ga. 886, 891 (700 SE2d 399) (2010).

At the motion for new trial hearing, a forensic pathologist testified for Appellant. He asserted that Garry's initial brain injury could have been caused by a fall from a sofa and that Garry could have been asymptomatic for "days" after the fall. Appellant's trial counsel testified that during her investigation of the case, she consulted with a trauma nurse and a physician, both of whom, after reviewing the medical evidence, expressed doubts about the theory that Garry's initial injury could have resulted from an accidental fall from a sofa. As a result, trial counsel had concerns about finding a credible medical expert who would support that theory and decided instead to challenge the State's expert evidence through cross-examination.

" 'It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics.' " *Hubbard v. State*, 285 Ga. 791, 794 (683 SE2d 602) (2009) (citation omitted). And " 'tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances.' " Id. In particular,

> [h]ow to deal with the presentation of an expert witness by the opposing side, including whether to present counter expert testimony, to rely upon cross-examination, to forego cross-examination and/or to forego development of certain

expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis for a successful ineffective assistance of counsel claim.

*Phillips v. State*, 285 Ga. 213, 222-223 (675 SE2d 1) (2009) (citation omitted). Moreover, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U. S. at 689.

Based on trial counsel's testimony regarding her pre-trial consultations with a trauma nurse and a physician, both of whom discounted the suggested alternative explanation for the victim's initial brain injury, counsel's strategic decision not to continue hunting for a defense expert, but instead to challenge the State's experts on cross-examination, while also presenting a robust defense to other aspects of the State's case, was not unreasonable and did not constitute deficient performance. Accordingly, Appellant's ineffective assistance of trial counsel claim cannot be sustained. See *Long*, 287 Ga. at 891 (holding that a court need not address both components of an ineffective assistance claim if the defendant makes an insufficient showing on one).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 18, 2013.

*William M. Ermine*, for appellant.

*Gregory W. Winters, District Attorney, Nancy S. Malcor, Dorothy V. Hull, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Bikoff, Assistant Attorney General*, for appellee.