**WHOLE COURT**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 29, 2016**

# In the Court of Appeals of Georgia

A15A2064. HUNT v. STATE.

BRANCH, Judge.

Edward Hunt appeals his conviction on 16 counts of criminal conduct as well as the denial of his motion for new trial. He contends the evidence was insufficient to support the convictions, that the trial court erred by admitting certain evidence, and that his trial counsel was ineffective by failing to challenge the scientific basis of the "Child Abuse Accommodation Syndrome." For the reasons below, we affirm the judgment but vacate the sentence and remand for resentencing.

On appeal, we do not assess the weight of the evidence or the credibility of witnesses. Instead, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*,

443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original).

When the case came to trial, K. B., age 17 at the time of trial, testified that her mother introduced Hunt to her and her siblings when K. B. was six years old, in approximately 1999. Months later, he moved into their home in Oconee County. When she was six, he touched her on the inside and outside of her clothing, and on the inside and outside of her private parts. While she was still six, his touching progressed to oral sex, which occurred almost every day and lasted until her mother and Hunt split up when she was about 7.5 years old. The family then moved to north Georgia and she rarely saw Hunt for several years. In approximately 2003 or 2004 when K. B. was in sixth grade, however, her mother and Hunt resumed their relationship, this time in Barrow County. They eventually got married and had a daughter, H. H., who was born on August 16, 2005. Hunt's improper sexual activity with K. B. started up again almost immediately thereafter, including Hunt forcing her to give him oral sex in order to be released from time-out in her room. During the time the family lived in Barrow County, Hunt would touch her "[e]verywhere. My breasts, my privates. . . [m]y vagina . . . my butt. He touched me everywhere," including inside her vagina with his fingers and touching her breast area with his

2

mouth. These incidents occurred "pretty often" and in multiple places in the house and in a building in the back of the house. During this time, Hunt would also touch her breasts, privates, and buttocks with his penis; give her oral sex; make her touch his privates; and make her give him oral sex. Hunt also had sex with her, once when she was 12 years old. On that occasion, she told him "no" and "to stop", but he "did it anyway," which hurt her and made her feel awful. When asked how often he had sex with her, K. B. testified "everything went on for so long it just kind of runs together. But at least two times that I know of." She testified that to make her engage in these activities, he would threaten to hit her mother, which he had done before, or to sexually abuse one of her siblings. The sexual activity continued until March of her eighth-grade year. At about that time, K. B. told her older sister S. B. what had been happening, and, later, when her younger sister said that Hunt had hurt her, K. B. told her mother. K. B.'s mother testified that K. B. appeared to be depressed at this time, and K. B.'s counselor testified that K. B. had difficulties with "trust, relationships, guilt, anger, and [had] a recurrent nightmare," which was consistent with a child that had been sexually abused.

The State also introduced two similar transactions into evidence. In one transaction, S. B. testified that Hunt once commented on her breast size and once

asked her if he she had been masturbating because "if [she] was masturbating then [she'd] better share." In the second similar transaction, H. H., Hunt's biological daughter and K. B.'s younger half-sister, testified that Hunt "did nasty things to [her] really hard." These events occurred when the child was age three. Other witnesses testified that H. H. reported that Hunt had hurt her mouth, butt, and vagina with his penis. K. B.'s mother contacted DFACS, which ultimately led to an investigation of Hunt's actions with K. B. Finally, the State introduced the testimony of a social worker who interviewed H. H.; as a part of her testimony, the social worker was allowed to testify, over defense objection, regarding the "Child Abuse Accommodation Syndrome."

Following the investigation of the allegations against Hunt regarding K. B., the State charged him with sixteen crimes, including two counts of rape, nine counts of child molestation, four counts of aggravated child molestation, and one count of cruelty to a child in the first degree. In six matching pairs of counts (Count 1 and 2, 3 and 4, 5 and 6, 7 and 8, 9 and 10, and 14 and 15), Hunt was charged with committing identical crimes against K. B. "on and between the 6th day of August, 2005, and the 1st day of March, 2007, the exact date being unknown to the Grand Jury," with the only difference between the two counts in each pair being that the

4

second count specified that the second occurrence of the same crime occurred on an "occasion different" or "on a different date" than the first occurrence. The jury returned a verdict against Hunt on all 16 counts, and the trial court sentenced him on each count. The sentences on each count within each of the six pairs of matching crimes were to run concurrently with each other.

1. Hunt first contends the evidence against him was insufficient. We disagree.

(a) K. B. testified to facts to show that Hunt committed each of the crimes alleged in the indictment within the time period alleged in the indictment.

As shown above, she testified that Hunt forced her to have sex with him against her will and under threat of harm to her mother on at least two occasions, which supports the two counts of rape. OCGA § 16-6-1 (a) (1) ("A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will"); *Ponder v. State*, 332 Ga. App. 576, 581 (1) (b) (774 SE2d 152) (2015) ("[F]orce may be proved by direct or circumstantial evidence. Lack of resistance, induced by fear, is force, and may be shown by the victim's state of mind from her prior experience with the defendant and subjective apprehension of danger from him.") (citation and punctuation omitted); *Summerour v. State*, 242 Ga. App. 599, 600 (1) (530 SE2d 494) (2000) ("The element of force is shown if the defendant's words

or acts were sufficient to instill in the victim a reasonable apprehension of bodily harm, violence, or other dangerous consequences to herself or others.") (punctuation and footnote omitted).

The victim also testified that Hunt put his penis in her mouth on multiple occasions and put his mouth on her vagina on multiple occasions, which supports the four counts of aggravated child molestation based on that conduct. OCGA § 16-6-4 (c) ("A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which . . . involves an act of sodomy). She testified that Hunt made her touch his penis on multiple occasions and that he touched her private parts in numerous ways on multiple occasions, which supports the seven counts of child molestation based on that conduct. OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person: . . . Does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."). And the evidence showed that by his conduct, Hunt hurt K. B., made her feel awful, caused her to feel depressed, and gave her nightmares, which supports the single count of cruelty to children in the first degree. See OCGA § 16-5-70 (b) ("Any person commits the offense of cruelty to children in the first degree when such person

6

maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."); *Banta v. State*, 282 Ga. 392, 397 (5) (651 SE2d 21) (2007) (one manner of proving cruelty to children in the first degree is to establish "the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm might result") (citations omitted); see, e.g., *Bunn v. State*, 307 Ga. App. 381, 383 (1) (a) (705 SE2d 180) (2010), affirmed, 291 Ga. 183 (728 SE2d 569) (2012) (cruel or excessive mental pain shown where victims testified that defendant's sexual misconduct made them feel uncomfortable and caused one victim to stop paying attention in school, to start stealing in school, and to became aggressive with her sister).

(b) As a part of his argument, Hunt contends that he was improperly convicted on both counts in each of the six matching pairs of counts set forth above for the reason that there was insufficient evidence that a second offense occurred; he also argues that the trial court was not authorized to sentence him on both of each matching counts. As we have held above, sufficient evidence was presented to show that Hunt committed each of the crimes alleged, including that he committed each of the crimes charged in the six matching pairs of counts on multiple occasions. We

agree, however, that Hunt may only be sentenced on one count in each of the six matching pairs of counts.

"Where two charges are indistinguishable because all of the averments, including date (which was not made an essential element), victim, and description of defendant's conduct constituting the offense were identical, only one sentence may be imposed." *Daniels v. State*, 320 Ga. App. 340, 342 (2) (739 SE2d 773) (2013) (citation and punctuation omitted). See also *LaPan v. State*, 167 Ga. App. 250, 253-254 (4) (305 SE2d 858) (1983) ("Since all the dates alleged fall within the period of the statute of limitation, only one sentence can be imposed.") (citations omitted) (physical precedent only); *Smith v. State*, 160 Ga. App. 26, 29 (4) (285 SE2d 749) (1981) (where "the counts in the accusation are identical except for the dates alleged," and the dates "were not made essential averments, only one conviction can stand") (citation omitted); *Hilliard v. State*, 193 Ga. App. 54 (1) (387 SE2d 21) (1989). Here, as shown above, in six matching pairs of counts (Count 1 and 2, 3 and 4, 5 and 6, 7 and 8, 9 and 10, and 14 and 15) Hunt was charged with committing one of these crimes against K. B. within a certain range of dates, "the exact date being unknown to the Grand Jury," with the only difference between the two counts in each pair being that the second count specified that the second occurrence of the same crime

8

occurred on an "occasion different" or "on a different date" than the first occurrence. The State did not allege in these counts, nor could they, that the separate events within the same date range were somehow material averments of the complaint.[1] Accordingly, Hunt may be sentenced on only one of the counts in each of the matching pairs of counts listed above.[2] Hunt's sentence therefore is vacated and the case remanded for re-sentencing consistent with this opinion.[3]

---

[1] See generally *Bloodworth v. State*, 128 Ga. App. 657, 658 (1) (197 SE2d 423) (1973) ("The rule is generally that time is not of the essence, and that on a general presentment there may be a conviction of the offense charged within the period of the statute of limitation, which may, however, be pleaded as res judicata to any offense fitting the averments of the indictment within such period. But where the date is alleged to be material, the contrary is true: the defendant may be convicted if and only if the proof corresponds to the date alleged, but no res judicata plea lies as to any other date.") (citations omitted).

[2] See *Jones v. State*, 333 Ga. App. 796, 800 (2) (777 SE2d 480) (2015) ("The State must make an election when it charges a defendant with multiple counts of the same crime: if the State makes the dates material averments and introduces sufficient evidence to prove the dates, it may obtain multiple convictions; if the State does not make the dates material averments, then it has a much broader time frame within which to prove the crimes were committed, but it is limited to a single conviction.").

[3] The cases cited by the dissent do not support a different conclusion. In both *Salley v. State*, 199 Ga. App. 358, 362 (4) (405 SE2d 260) (1991), and *Hamilton v. State*, 167 Ga. App. 370, 371 (306 SE2d 673) (1983), unlike the present case, the two otherwise matching counts referred to different periods of time and thus the counts were distinguishable and the defendant could be sentenced on both counts. See *Hamilton*, 167 Ga. App. at 371 (where "[t]he averments of each count refer to a different period of time . . . [the] same is made an essential averment of the

2. Hunt contends the trial court erred by allowing similar transaction evidence regarding S. B. and H. H. The trial in this case was held in February 2011 and therefore former OCGA § 24-2-2 was applicable at the time.[4]

Under the prior law, "evidence of an independent bad act committed by the defendant [could] be admissible if the evidence [was] substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he has a criminal character," such as "to prove such things as motive, intent, bent of mind, course of conduct, intent, plan, scheme, or identity." *Peoples v. State*, 295 Ga. 44, 53-54 (4) (b) (757 SE2d 646) (2014) (citations and punctuation omitted). Thus, at the hearing on the similar transaction evidence, the State bears the burden of showing

---

transaction, and each count of the indictment is distinguishable"). In the present case, each of the pairs of matching counts refers to *the same period of time*, with the only difference being that the second count alleges that within that same period of time a second identical crime occurred on a different unknown date. And the averment that there was separate crime within the same period but on an unknown date does not, by any means, establish the date of the crime as a material averment. The third case cited by the dissent, *Anderson v. State*, 306 Ga. App. 423, 424 (2) (702 SE2d 458) (2010), is also distinguishable because in that case, the defendant was charged with "separate and distinct acts" for which each date of commission was alleged as a material averment.

[4] Georgia's new rules of evidence apply to "any motion made or hearing or trial commenced on or after" January 1, 2013. See 2011 Ga. L. p. 99, § 2, 101.

10

that it seeks to introduce the evidence for an appropriate purpose; that there is sufficient evidence to establish that the accused committed the independent act; and that there is a sufficient connection or similarity between the independent act and the crime charged so that proof of the former tends to prove the latter.

*Johnson v. State*, 289 Ga. 22, 24 (2) (709 SE2d 217) (2011) (citations omitted). With regard to similarity, "there can be a substantial variation of circumstances where there exists a logical connection between crimes which are essentially dissimilar." *Mattox v. State*, 287 Ga. App. 280, 282 (1) (651 SE2d 192) (2007) (punctuation and footnote omitted). A trial court's factual findings regarding whether the State satisfied the three-prong test will be affirmed unless those factual findings are clearly erroneous. *Reed v. State*, 291 Ga. 10, 13-14 (3) (727 SE2d 112) (2012). The trial court's decision to admit the similar transaction is reviewed for abuse of discretion. Id.

(a) Hunt objected to S. B.'s testimony that Hunt once commented on her breast size and once asked her if he she had been masturbating because "if [she] was masturbating then [she'd] better share." Following a hearing on the admissibility of the evidence regarding S. B., the trial court found that although the evidence did not show a criminal offense, "such inappropriate and questionable behavior is admissible and tends to show Defendant's lustful disposition"; that the evidence could be offered

11

to show Hunt's "common scheme and a course of conduct of instigating inappropriate sexual contact with a minor female family member"; that it was admissible to show his "sexual proclivity toward young girls, i.e., bent of mind"; and that there was sufficient similarity and connection between these acts and the charges against Hunt.

We find no abuse of discretion. First, bent of mind, course of conduct, and lustful disposition were all valid purposes under the prior law. See *Dillard v. State*, 297 Ga. 756, 759 (3) (778 SE2d 184) (2015). And Hunt's comment about S. B. "sharing" can certainly be construed in a way to show his bent of mind and lustful disposition. Second, S. B.'s testimony was sufficient to establish that he made the comments at issue. And, third, the trial court's finding that the prior acts were sufficiently similar to the charges against Hunt was not clearly erroneous. Again, the "sharing" comment can be construed as an act whereby Hunt instigated inappropriate sexual contact with a minor female family member, as he did in the charges for which he was on trial. And "this Court has previously upheld the admission of similar transaction evidence demonstrating noncriminal, but inappropriate or questionable behavior by a defendant toward young girls as tending to show the defendant's lustful disposition." *Leaptrot v. State*, 272 Ga. App. 587, 597 (3) (a) (612 SE2d 887) (2005)

12

(citations omitted). We therefore find no abuse of discretion by the trial court in allowing the similar transaction evidence regarding S. B.

(b) Hunt enumerates as error that the trial court allowed similar transaction evidence regarding Hunt's actions on K. B.'s younger sister H. H. But Hunt argues only that the trial court erred by admitting child hearsay of H. H. under former OCGA § 24-3-16 and *Gregg v. State*, 201 Ga. App. 238 (411 SE2d 65) (1991).

Under former OCGA § 24-3-16,

A statement made by a child under the age of 14 years describing any act of sexual contact . . . performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[5]

When assessing the indicia of reliability, the trial court may consider the following factors:

(1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the

---

[5] For offenses occurring on or after July 1, 2013, a showing of indicia of reliability is no longer a requirement for allowing child hearsay evidence. Ga. L. 2013, p. 222, § 21; OCGA § 24–8–820 (also changing age to 16).

13

child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.

*Gregg*, 201 Ga. App. at 240 (3) (b) (citations omitted). Other factors, such as "consistency with known facts, repeated questioning or counseling by several people during the interview period, and whether the interviews were conducted by law enforcement personnel with the intention of gathering evidence against the accused" may also be considered. *Ferreri v. State*, 267 Ga. App. 811, 813 (600 SE2d 793) (2004) (citation omitted). A trial court is not required to make "a specific finding of sufficient indicia of reliability in order for the out-of-court statements of child victims to be admissible." *Whorton v. State*, 321 Ga. App. 335, 338 (1) (741 SE2d 653) (2013) (punctuation and footnote omitted). Rather, the requirements of former OCGA § 24-3-16 are met if "after both parties have rested, the record contains evidence which would support such a finding." Id. (punctuation and footnote omitted).

In this case, the trial court assessed the ten *Gregg* factors and found that the only factors that were "questionable" were "the child's age and the spontaneity of her statements." After additional discussion, the court concluded that the statements had sufficient reliability to be submitted to the jury for the ultimate determination of credibility.

Hunt's primary argument on appeal is deficient. In the single sentence that directly addresses the child hearsay, Hunt only argues that the statements made by H. H. to the witnesses were internally inconsistent and not spontaneous. Yet Hunt has failed to identify precisely what evidence he challenges and failed to offer any explanation, supporting facts, or other detail to support his conclusion, either in the argument section of his brief or his statement of facts. "It is not this Court's job to cull the record on behalf of the [appellant] to find alleged errors." *Maxwell v. State*, 290 Ga. 574, 575 (2) (722 SE2d 763) (2012) (citation omitted). Accordingly, Hunt has failed to carry his burden of showing an abuse of discretion by the trial court in admitting the similar transaction evidence, including child hearsay, about Hunt's actions with regard to H. H. See generally *Brittain v. State*, 329 Ga. App. 689, 693 (2) (766 SE2d 106) (2014) (nothing for this Court to review where appellant provided only "vague reference to alleged hearsay statements by various witnesses . . . [and]

15

little detail or specific record citations to the statements he contends were admitted in error by the trial court").

3. Hunt contends the trial court erred by allowing testimony regarding alleged acts of violence between Hunt and K. B's mother.

Prior to trial, the State stated its intent to offer testimony regarding acts of violence between Hunt and K. B.'s mother, that K. B. witnessed, on the ground that the incidents were relevant to show why K. B. waited to disclose the crimes and as evidence of force for the rape count. Hunt objected to the admission of this evidence on the ground that the State failed to show that the alleged domestic violence caused K. B. to delay reporting and on the ground that the evidence put Hunt's character in issue. On appeal, Hunt contends the court erred by allowing the domestic violence evidence because the evidence presented at trial did not support the State's contention that witnessing the domestic violence prompted K. B. to delay reporting the crimes against her. Pretermitting that question, however, the evidence was otherwise relevant in that it shed light on the force element of rape, that is, that Hunt told K. B. that he would hurt her mother if she refused his sexual advances. *Summerour*, 242 Ga. App. at 601 (2) (where force is an element of proof, "victim's testimony regarding [defendant's] violence in the form of threats to himself and others and the victim's

16

fear of him was relevant and admissible" even if the evidence incidentally places the defendant's character in issue) (footnote omitted). We find no abuse of discretion in allowing this evidence. *Siharath v. State*, 246 Ga. App. 736, 739 (2) (541 SE2d 71) (2000) (proof that defendant had harmed victim's mother and others was some evidence that defendant used force, in the form of intimidation, to rape child).

4. Finally, Hunt contends his trial counsel was ineffective because she failed to present evidence to challenge the scientific basis of the "Child Abuse Accommodation Syndrome" (CAAS), especially given that the jury was not instructed to consider the evidence only in connection with the similar transaction involving H. H. "To prevail on this claim, Appellant must show both that [his] trial counsel provided deficient performance and that, but for that unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Brown v. State*, 292 Ga. 454, 456 (2) (738 SE2d 591) (2013) (citations omitted).

At trial, the State introduced the testimony of Becky Lee, the director of a children's advocacy center with a master's degree in social work who had conducted over 500 forensic interviews. Lee was qualified as an expert in forensic interviewing, and she testified that she interviewed H. H. in August 2009. During Lee's testimony,

17

the State announced that it intended to have Lee testify about CAAS, and Hunt objected on the ground that Lee was not qualified as an expert in child abuse. The court ruled that as an expert forensic interviewer, Lee was qualified to testify about CAAS. Lee then identified and described five "categories" of CAAS: secrecy, helplessness, entrapment and accommodation, delayed and unconvincing disclosure, and retraction. Lee did not relate her testimony to any specific victim. Hunt's trial counsel then cross-examined Lee and got Lee to admit that even though a child who has experienced molestation may remain secret, the lack of a disclosure by a child is also consistent with the defendant's innocence. And counsel made the same argument to the jury during closing.

At the hearing on Hunt's motion for new trial, Hunt's appellate counsel presented the testimony of Dr. Mac Martin, a forensic psychologist, to explain the basis of CAAS and the appropriate uses of that theory. In Hunt's only reference to Martin's testimony, Hunt contends that Martin testified that "using CAAS in a forensic context is not appropriate." But Hunt has not shown that Lee used CAAS in a forensic or inappropriate manner; Hunt has not shown that Lee used CAAS to opine that either K. B. or H. H. had been molested. Moreover, Hunt's trial counsel testified that her decision not to employ an expert to rebut Lee's testimony regarding CAAS

18

was strategic; she testified that calling such an expert could bolster the State's expert by testifying to much of the same information. Rather, she chose to cross-examine Lee to show that the "symptoms of this syndrome were also consistent with a kid who wasn't molested," and to illustrate that an expert can "take anything and make it look like it's consistent with child sexual abuse."

"It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics." *Hubbard v. State*, 285 Ga. 791, 794 (3) (683 SE2d 602) (2009) (citation and punctuation omitted). "And tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances." *Brown*, 292 Ga. at 456 (2) (citation and punctuation omitted). Given that Martin testified that an abused child will experience several of the CAAS traits, which would have bolstered the State's case at trial, we cannot conclude that no competent attorney would have relied on cross-examination alone to rebut the testimony about CAAS in this case. Accordingly, Hunt's claim of ineffective assistance of counsel must fail. See Id. ("[C]ounsel's strategic decision not to continue hunting for a defense expert, but instead to challenge the State's experts on cross-examination, while also presenting a robust defense to other aspects of the

19

State's case, was not unreasonable and did not constitute deficient performance.")
(citation omitted).

   *Judgment affirmed. Sentence vacated and case remanded with direction.*

*Andrews, P. J., Barnes, P. J., Ellington, P. J., Dillard and McFadden, JJ., concur.*

*Miller, P. J., concurs in part and dissents in part.*

A15A2064.  HUNT v. STATE.


MILLER, Presiding Judge, concurring in part and dissenting in part.

I concur fully in Divisions 2, 3, and 4 of the majority's opinion. I also concur fully with the majority's holding in Division 1 that the evidence was sufficient to support all of Hunt's convictions. I respectfully dissent to the majority's decision to vacate Hunt's sentence and remand this case with direction, because the trial court properly entered separate sentences on each of Hunt's convictions.

"Where an averment in one count of an accusation or indictment distinguishes it from all other counts, either by alleging a different set of facts or *a different date* which is made an essential averment of the transaction, the State may on conviction punish the defendant for the various crimes." (Citation and punctuation omitted; emphasis supplied.) *Salley v. State*, 199 Ga. App. 358, 362 (4) (405 SE2d 260) (1991); see also *Anderson v. State*, 306 Ga. App. 423, 424 (2) (702 Se2d 458) (2010). Moreover, it is well settled that where the "averments of each count refer to a different period of time [the] same is made an essential averment of the transaction, and each count of the indictment is distinguishable." (Citations omitted.) *Hamilton v. State*, 167 Ga. App. 370, 371 (306 SE2d 673) (1983).

21

Here, in each pair of counts (Counts 1 & 2, 3 & 4, 5 & 6, 7 & 8, 9 & 10 and 14 & 15), the second count charged Hunt with committing the alleged act on an occasion or date different from the prior count. For instance, Count 2 charged Hunt with committing rape "on an occasion different than Count 1;" Count 4 charged Hunt with committing child molestation "on a date different from Count 3;" and Count 6 charged Hunt with committing aggravated child molestation "on a date different than Count 5." Because Hunt's indictment alleged that each pair of crimes was committed on different dates, those dates were made an essential averment of each charged crime. *Salley*, supra, 199 Ga. App. at 362 (4). Evidently, the trial court found that the evidence was legally sufficient as to each date alleged in each count of Hunt's indictment. Consequently, the trial court did not err in sentencing Hunt separately for each of his convictions. See *Anderson*, supra, 306 ga. App. at 459 (2). Accordingly, I would affirm the trial court.