**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 15, 2024**

# In the Court of Appeals of Georgia

A23A1752. SOLIS v. THE STATE.

PIPKIN, Judge.

Appellant Hector Rene Solis was convicted of six counts of sexual battery, see OCGA § 16-6-22.1 (b), and one count of Cruelty to Children in the First Degree, see OCGA § 16-5-70 (b). On appeal, Solis contends that his trial was infected with structural error, that trial counsel was ineffective, and that he is entitled to a new trial as a result of juror misconduct. While we agree that Solis is entitled to a new trial on the charge of Cruelty to Children in the First Degree as a consequence of juror misconduct, we affirm in all other respects. Accordingly, we affirm in part and reverse in part.

1. When viewed in a light most favorable to the verdicts, see *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (99 SCt 2781, 61 LE2d 560) (1979), the evidence adduced at

trial established as follows. The victim, D. S., was born in July 2004, and Solis is her father. D. S., who was 17 years old at the time of trial, testified that she had a good relationship with her father "until he would drink or take his medicine or forget to take his medicine." D. S. testified that Solis began sexually abusing her around the time she was four-years old. The victim explained that, in her younger years, she and Solis bathed together; when they did, Solis made her touch his genitals. D. S. also described incidents in which Solis rubbed his penis "back and forth on [her] butt."

Later, when she was "going through puberty," Solis would "pull" her pubic hair. D. S. recounted that, around the time she was 13-years old, Solis forcefully shaved her pubic area and then put his mouth on her genitalia. Around the time she turned the age of 15, D. S. started showering alone, but this did not deter Solis; according to D. S., he would come into the shower and "touch [her] everywhere," including her "private parts" and breasts.[1] D. S. testified that, around this same time, Solis forced her to touch his genitals after he had showered because, he had said, "he had something on it, like a bump, and [he] wanted [her] to feel it." D. S. lacked any nearby relatives and had few friends, so it was not until late 2020 that D. S. disclosed

---

[1] D. S. explained that her "private parts" meant her "vagina."

the abuse, first to her boyfriend and then to her step-mother. When asked how the incidents made her feel, D. S. testified that she "didn't like it because [she] knew it wasn't right[.]"

In addition to the allegations made by D. S., the jury also heard from K. R., who, as a child, lived in close proximity to the Solis residence. K. R. testified that, in the summer of 2010 -- when she was nine-years old -- she regularly visited the Solis household to spend time with D. S. K. R. recounted that, on what would be her final visit to the house, Solis offered to wash her swim suit and instructed her to get into a bath with D. S. According to K. R., Solis came into the bathroom with a camera, started taking pictures, and then put his hands "in her private zone," touching the top of her vagina. K. R. told the jury that she grabbed a towel and tried to escape from the house but that Solis blocked her path; D. S. came downstairs and helped K. R. leave the house.

Solis testified in his own defense; he denied the allegations and testified that, at the time of D. S.'s outcry, she was unhappy because Solis had "put some restrictions on [her]" as a result of her poor grades. Following a four-day trial, the jury returned guilty verdicts on the charges of sexual battery and cruelty to children.

Following the verdict, the jury was dismissed; however, the trial court recalled the jury after discovering an error on the verdict form and instructed the jury to re-deliberate on the charge of Cruelty to Children in the First Degree. The jury affirmed its verdict, and Solis was sentenced. Solis timely filed a motion for new trial; after being appointed new counsel, he amended that motion. Following a hearing, the trial court denied the motion for new trial as amended. Solis now appeals, raising a number of enumerations. We address them in turn.

2. Solis's first two enumerations concern the availability of hearing aids during trial.

In a pre-trial motion styled "Motion to Obtain Devices to Aid in Hearing," defense counsel asserted that Solis "does not hear well" and that, in order for the defendant "to have meaningful conversations" with counsel, he was "in need of a hearing aid." A subsequent pre-trial hearing reflects that, approximately a month before trial,[2] the State provided defense counsel with a set of hearing aids for Solis. On the first day of trial, however, Solis was wearing only one of the hearing aids. As to this

---

[2] The record reflects that the hearing aids were provided to trial counsel on Solis's behalf no later than July 22, 2021 -- the date of the pre-trial hearing -- and that trial began on August 16, 2021.

issue, the transcript reveals the following exchange in open court in the presence of trial counsel:

> The Court: All right. Senor Solis, you're not wearing your hearing aids.
>
> The Defendant: I can hear what they say.
>
> The Court: Okay.
>
> . . . .
>
> The Court: You have one?
>
> The Defendant: I can hear -- I have one. Yes, sir.
>
> [Spanish-language] Interpreter: -- he has his right hearing aid on.
>
> The Court: Okay. Are you satisfied with that?
>
> The Defendant: Yeah, it'll be okay.
>
> The Court: It'll be okay?
>
> The Defendant: Yes. Yes.
>
> The Court. All right. Thank you.

The trial commenced shortly thereafter.

(a) On appeal, Solis asserts that he "is hearing impaired and requires hearing aids" but that "[h]e was denied access to two working hearing aids during his trial." According to Solis, this amounts to a "structural error." This argument is waived.

As we have explained, a structural error "is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."

5

(Citation and punctuation omitted.) *Hunt v. State*, 268 Ga. App. 568, 570–71 (1) (602 SE2d 312) (2004). While claims of structural error are not subject to harmless-error analysis, see id., such claims are nevertheless still "capable of forfeiture." (Citation and punctuation omitted.) *Pyatt v. State*, 298 Ga. 742, 750 (5) (784 SE2d 759) (2016). Here, as he acknowledges on appeal, Solis did not object to being tried with only one hearing aid, and, thus, he failed to preserve this enumeration for our review. See, e.g., *Payne v. State*, 314 Ga. 322, 328 (2) (877 SE2d 202) (2022); *Pyatt*, 298 Ga. at 750. Instead, we consider this claim through the lens of Solis's ineffective assistance of counsel claim. See *Alexander v. State*, 313 Ga. 521, 521 (870 SE2d 729) (2022).

(b) Solis contends on appeal, as he did below that "[t]rial counsel acted ineffectively when he failed to ensure that [Solis] was able to effectively communicate and participate in the proceedings." To succeed on his claim, Solis must demonstrate both that his trial counsel's performance was deficient and that he suffered prejudice as a result of counsel's deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To prove deficient performance, [Solis] must show that his lawyer performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing

professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). As to prejudice, Solis must establish that "the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious that they likely affected the outcome of the trial." *Jones v. State*, 305 Ga. 750, 755 (4) (827 SE2d 879) (2019). "[S]atisfaction of this test is a difficult endeavor. Simply because a defendant has shown that his trial counsel performed deficiently does not lead to an automatic conclusion that he was prejudiced by counsel's deficient performance." *Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019). And "[i]f an appellant is unable to satisfy one prong of the *Strickland* test, it is not incumbent upon [the reviewing court] to examine the other prong." (Citation and punctuation omitted.) Id. at 143 (3).

As an initial matter, Solis has failed to articulate the exact manner in which trial counsel performed deficiently. In his amended motion for new trial and accompanying brief, Solis asserted that trial counsel "failed to provide [Solis] with *properly charged* hearing aids during the course of trial" but then, at the subsequent hearing, argued that trial counsel "should have advocated" for Solis and "should've made sure that [Solis] had both of [the hearing aids] working." On appeal, Solis argues that "trial counsel deprived Appellant of his hearing aids" and that trial counsel only supplied

one "properly charged" hearing aid. The record, however, does not support any of these contentions.

There is no merit to the claim that trial counsel was ineffective for failing to advocate for Solis to have a second hearing aid at trial. While it is true that trial counsel filed a motion to secure hearing aids for his client, trial counsel also testified at the hearing on the motion for new trial that Solis did not have the benefit of hearing aids while he was awaiting trial and that Solis was still able to understand and communicate during this time. Further, it is undisputed that Solis was wearing one of those hearing aids at the start of the trial and, importantly, that Solis *twice* told the trial court "I can hear" at the start of trial. In light of these circumstances, we cannot say that trial counsel's apparent decision to allow his client to proceed to trial while wearing only one hearing aid was so patently unreasonable that no reasonable attorney would have made a similar decision. See *Middlebrooks v. State*, 310 Ga. 748, 752 (3) (854 SE2d 503) (2021) (recognizing that "to establish that trial counsel was deficient, the appellant has to show that 'no reasonable attorney' would have taken the same course of action as trial counsel" (citation and punctuation omitted)).

While Solis also claims that trial counsel "deprived" him of his hearing aids and that he "was only wearing his right hearing aid as that was the only one trial counsel had provided that was properly charged," there is no evidence in the record to support these assertions.[3] At best, the record shows only that the hearing aids and charger were *initially* given to trial counsel and that, *at various unspecified times*, trial counsel attempted to charge the hearing aids for Solis; there is no accounting for who was responsible for maintaining and managing Solis's hearing aids or why Solis had only one hearing aid at the start of trial. Without evidence to support his claims, Solis cannot overcome the strong presumption that trial counsel performed reasonably. See *Thornton v. State*, 307 Ga. 121, 126 (3) (834 SE2d 814) (2019) ("[T]he law recognizes a 'strong presumption' that counsel performed reasonably, and Appellant bears the burden of overcoming this presumption." (citation and punctuation omitted)).

Finally, even if trial counsel had performed deficiently, there is no evidence of prejudice. As an initial matter, Solis did not testify at the hearing on his motion for

---

[3] The claim on appeal that "[t]rial counsel deprived [Solis] of his hearing aids" lacks any citation to the record. Similarly, the claim that trial counsel failed to charge the hearing aids is supported by a citation to the record that makes no reference to a hearing aid being charged; in fact, it is to that portion of the transcript, which is quoted above, in which Solis discusses his hearing aid with the trial court.

new trial; it is unclear from the trial record whether Solis was able to wear both hearing aids at some points during trial,[4] and, if not, there is no evidence addressing what benefit, if any, that second hearing aid would have provided. Further, the trial transcript reflects that, when asked by the trial court during trial whether Solis had understood the proceedings, the Spanish-language interpreter responded as follows: "Yes. He has understood everything that's come in through the entire process of trial. There's been a couple of times that he's requested clarification on some terms. That has been clarified through interpretation. There's been no communication or language issues." Similarly, trial counsel testified at the hearing on the motion for new trial that the "interpreter constantly let [him] know that [Solis] knew and heard what was going on." The trial court plainly credited this evidence.

Although it is true there were various instances in which Solis, while testifying, asked the respective speaker for clarification -- replying either "huh" or "say that again" -- these responses were sporadic and Solis's ultimate answers were responsive to the questions asked; further, the jury had already been made aware that Solis suffered from hearing loss. Again, in light of the record and evidence before us, we

---

[4] At various points during trial, both Solis and trial counsel appear to reference Solis wearing *both* hearing aids.

agree with the trial court that Solis has failed "to demonstrate a reasonable probability, sufficient to undermine confidence in the outcome, that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." *Emmons v. Bryant*, 312 Ga. 711, 717 (2) (864 SE2d 1) (2021).

3. Solis also asserts several enumerations concerning his conviction for Cruelty to Children in the First Degree. Specifically, he challenges the fact that the jury was recalled after it was dismissed and, further, claims that he is entitled to a new trial as a consequence of juror misconduct. We address both below.[5]

The indictment here charged Solis with Cruelty to Children in the First Degree on the basis that he "did maliciously cause [D. S.], a child under the age of eighteen (18) years, cruel and excessive mental pain by performing sexual acts on [her]." While there is no question that this offense was addressed at Solis's trial and that the jury was properly charged on Cruelty to Children in the First Degree, the verdict form supplied to the jury erroneously listed the charge as "Cruelty to Children in the *Third* Degree"; the discrepancy was not discovered until *after* the jury had announced its guilty verdict and had been permitted to leave the courtroom. After discovering that

---

[5] Solis also asserts a claim of ineffective assistance of counsel, but, given our resolution of his juror-misconduct claim, we need not reach it.

the jurors were still, as a whole, collected together in the hallway right outside the courtroom, the trial court recalled them.[6] Thereafter, the trial court advised the jury of the mistake, and the jury was sent back to the jury room to reconsider its verdict.

During this second round of deliberations, the jury asked two questions. The jury first asked about "the definitions of the degrees," to which the trial court responded in writing, "you were charged only on first degree cruelty[,] and I must ask if that is your decision." The jury then asked for the "textbook" definition of Cruelty to Children in the "first degree, second degree, [and] third degree," to which the trial court responded, "you have only been charged on First Degree, and you must decide guilty or not guilty on that charge." Apparently unsatisfied with the trial court's

---

[6] The trial transcript reflects that, when the trial court asked aloud if the jurors were "still here," an "unidentified speaker" responded, "they're outside . . . all of them are here, all 12 of them." Later, one of the prosecuting attorneys confirmed these details. At the hearing on the motion for new trial, the attorney testified that, after the trial, he went into the hallway right outside of the courtroom to speak with the jurors and encountered the entirety of the jury as they "came around through the back hallway." The attorney explained that, while jurors will usually go separate ways as they leave the courtroom, "[i]n this case, all of them came over, I guess, just kind of a mob mentality. They all came." It was while he was there -- briefly re-introducing himself -- when someone "came running out of Courtroom 3 into the hall . . . and said there was some issue, that the jurors needed to stay here." The jurors were thereafter brought back into the courtroom.

responses -- and despite repeated, express instructions to the contrary[7] -- one of the jurors used her cellular telephone to conduct an online search regarding the various classifications of the offense of cruelty to children; that information was then shared with and discussed by the other jurors. Following their second round of deliberations, the jury returned a verdict finding Solis guilty of First Degree Cruelty to Children as charged.

Solis argues on appeal, like he did below, that he is entitled to a new trial because the trial court erroneously recalled the jury after they had been dismissed and, further, because the jurors engaged in misconduct during the second round of deliberations. While we conclude that the trial court properly recalled the jury to re-deliberate, we agree with Solis that he is entitled to a new trial on the count of Cruelty to Children in the First Degree as a result of the juror misconduct.

---

[7] During the jury charge, the jurors were advised that they were "not permitted to conduct any research about this case, including persons, places or legal concepts mentioned during the trial. These rules not only apply to in-person communication but also communication or research using cell phones, text messaging, website, blogs, social media, computers, anything." This charge mirrored an earlier instruction by the trial court to the jurors that they were not to "go out and do any investigation on your own, any research on your own, Google something, look up any legal concepts, [or] get advice from your cousin, the lawyer."

(a) We first address whether the jury was properly recalled.[8] As our Supreme Court has explained, "[w]hen a verdict is rendered on a crime that was not charged to the jury, that verdict is illegal."[9] *Prater v. State*, 273 Ga. 477, 482 (5) (545 SE2d 864) (2001). Under such circumstances, "'the proper procedure is for the trial court and counsel to review the verdict prior to its publication in open court,' and, when an improper verdict is rendered, the court should return the jury for further deliberations." (Punctuation omitted.) *Washington v. State*, 333 Ga. App. 234, 247 (1) (775 SE2d 719) (2015) (quoting *State v. Freeman*, 264 Ga. 276, 278 (444 SE2d 80)

---

[8] We address this issue as a threshold matter because longstanding precedent reflects that, "[i]f the trial court receives a verdict of guilty on a crime that was neither charged nor was a lesser included offense of a crime charged, then the verdict has the legal effect of an acquittal." *Stubbs v. State*, 220 Ga. App. 106, 107 (1) (469 SE2d 229) (1996).

[9] But see OCGA § 17-9-2 ("Verdicts are to have a reasonable intendment, are to receive a reasonable construction, and are not to be avoided unless from necessity."). Given that Solis was only ever charged with Cruelty to Children in the *First* Degree, that this was the sole version of the offense on which the jury was instructed, and that the mislabeled verdict form was supplied by the trial court, we question whether OCGA § 17-9-2 would have authorized the trial court to reasonably construe the verdict to mean that the jury found Solis guilty as charged. See *Rolle v. State*, 177 Ga. App. 79 (338 SE2d 519) (1985) (relying on OCGA § 17-9-2 to conclude that there was no error "in treating the jury's verdict of guilty of 'breaking and entering' as a finding of guilt on the burglary charge"). However, no one has raised that issue -- and the trial court did not take that course of action -- and, thus, we need not address it.

(1994)). Here, given the discrepancy in the jury charge and the verdict form, the trial court was authorized to instruct the jury to re-deliberate and consider the offense of First Degree Cruelty to Children.

Solis argues, however, that this procedure is prohibited under OCGA § 17-9-40, which states that "[a] verdict may be amended in mere matter of form after the jury have dispersed; but, after it has been received, recorded, and the jury dispersed, it may not be amended in matter of substance, either by what the jurors say they intended to find or otherwise."[10] According to Solis, the jury in this case was "dispersed" and, thus, they were not entitled to amend their verdict. We disagree. While the jurors had been dismissed from the courtroom, the undisputed evidence here shows that they remained together as a collective and only made it to the hallway outside the courtroom before being recalled. During that time -- which was mere minutes -- the jurors encountered only one of the prosecuting attorneys, who did nothing more than reintroduce himself and re-learn a juror's name. Given the circumstances here, we

_____

[10] Solis also asserts that we should review this case through the lens of *Dietz v. Bouldin*, 579 U. S. 40 (136 SCt 1885, 195 LE2d 161) (2016); however, *Dietz* was decided under federal law, and, further, the Supreme Court of the United States expressly declined to decide whether that decision applies in criminal cases. Id. at 51 (II) (B). See also *Wallace v. State*, 303 Ga. 34, 38 (2) (810 SE2d 93) (2018) (referencing *Dietz*).

15

conclude that the jury had not yet "dispersed." See *Booth v. State*, 311 Ga. 374, 377 (2) (858 SE2d 39) (2021) (OCGA § 17-9-40 did not prohibit a jury from being recalled where the record showed "that after being told that they were 'dismissed to the jury room,' and before being recalled to the courtroom, none of them left the courthouse" and that, during such time, "[t]he jury remained together as a whole and did not separate before being asked to deliberate further").

(b) Solis argued in his motion for new trial that he was entitled to a new trial on the charge of Cruelty to Children in the First Degree as a consequence of the juror misconduct. The trial court denied this claim for relief, and we review it for abuse of discretion. See *Lockridge v. State*, 260 Ga. 528, 529 (397 SE2d 695) (1990).

As Georgia courts have explained before, "when a jury is selected and sworn to try the criminally accused, the law contemplates that no outside influence shall be brought to bear on the minds of the jury, and that nothing shall occur outside of the trial which shall disturb their minds in any way." (Citation and punctuation omitted.) *Edge v. State*, 345 Ga. App. 794, 796 (2) (815 SE2d 146) (2018), overruled on other grounds, *Flowers v. State*, 307 Ga. 618 (837 SE2d 824) (2020). Indeed,

> [a]llowing jurors to decide a case based on "law" provided by a juror during deliberations patently violates a defendant's Sixth Amendment

16

rights not only to be present at all critical stages of his trial, but also to be tried by a fair and impartial jury. . . . And where, as here, misconduct of a juror or of the jury is shown, the presumption is that the defendant has been injured, and the onus is upon the State to remove this presumption by proper proof. That is, the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred. A jury verdict will not be upset solely because of juror misconduct, however, unless such conduct was so prejudicial that the verdict must be deemed inherently lacking in due process. Put another way, a new trial will not be granted unless there is a reasonable possibility that the improper information collected by jurors contributed to the conviction.

(Punctuation and footnotes omitted.) *Chambers v. State*, 321 Ga. App. 512, 518–519

(1) (739 SE2d 513) (2013) (physical precedent only).

Here, there is no dispute that, during the second round of deliberations, at least one juror used her cellular telephone to conduct internet research concerning the various classifications of the offense of cruelty to children and, further, that the fruits of this research were shared amongst the jurors and used as part of their deliberations; thus, it became the State's burden to prove *beyond a reasonable doubt* that no harm had occurred. In denying Solis's motion for new trial, the trial court reasoned that there was no harm because the elements of Cruelty to Children in the Third Degree vastly differ from those involved in Cruelty to Children in the First Degree and, thus, that any research into Cruelty to Children in the Third Degree would have been immaterial to the jury's ultimate verdict. This conclusion misses the mark.

17

The evidence presented below does not establish that the jury's internet research was limited solely to Cruelty to Children in the Third Degree; instead, the undisputed evidence shows that the jury was researching *both* offenses to determine the differences between them and that the juror "was confused about the verbiage *in the charge*." (Emphasis supplied.) Thus, the juror's research here was directly related to the sole charge on which the jurors were re-deliberating. More importantly, the State presented no evidence on the juror misconduct aside from *what* the juror was researching. Indeed, the sole juror who testified at the hearing on the motion for new trial could only vaguely report that the juror in question "was unsure of the meaning of one of the charges . . . so she Googled the meaning of what was the charge. I don't remember what it was. . . . . But what I remember that -- after that they Googled that we discuss in the group and then we do the decision." (As in original.) Notably, there is no evidence as to what information the jurors actually learned or how this information impacted their deliberation.

As we have explained before, "we are not suggesting that in every case where juror misconduct is alleged, the State is under an obligation to call each individual juror," *Edge*, 345 Ga. App. at 798 (2), but the State was required to "overcome, by

18

proof beyond a reasonable doubt, the presumption of prejudice that arose in this case." *Chambers*, 321 Ga. App. at 520. The State failed in this regard, and thus, Solis is entitled to a new trial as to the charge of Cruelty to Children in the First Degree.[11] See *Edge*, 345 Ga. App. at 796-798 (2) (reversal of denial of motion for new trial where jurors conducted independent investigation, and State failed to present evidence from the relevant jurors concerning that investigation); *Chambers*, 321 Ga. App. at 515-521 (1) (defendant entitled to new trial after juror conducted legal research on affirmative defense, and State failed to present evidence addressing how extra-judicial research was used).

*Judgment affirmed in part and reversed in part. Rickman, J., concurs. Dillard, P. J., concurs fully as to Divisions 1, 2 and 3 (a) and in judgment only as to Division 3 (b).*

---

[11] While neither party addresses this, the facts, as set forth in Division 1 were sufficient to sustain Solis's conviction for Cruelty to Children in the First Degree. See *Hunt v. State*, 336 Ga. App. 821, 824 (1) (a) (783 SE2d 456) (2016). Accordingly, Solis may be retried on the charge. See *State v. Heggs*, 252 Ga. App. 865, 865-866 (558 SE2d 41) (2001).