**FIFTH DIVISION
MCFADDEN, P. J.,
BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 31, 2017**

# In the Court of Appeals of Georgia

A17A1011. TEZENO v. THE STATE.

BETHEL, Judge.

Dianell Michael Tezeno appeals[1] from the trial court's denial of his motion for a new trial after a jury convicted him on two counts of aggravated child molestation, two counts of sodomy, one count of enticing a child for indecent purposes, and one count of solicitation of sodomy. On appeal, Tezeno enumerates three errors. First, Tezeno argues that there was insufficient evidence to support his convictions for enticing a child for indecent purposes and solicitation of sodomy. Second, he argues that his trial counsel was ineffective in several regards, namely in failing to obtain

---

[1] Tezeno filed a notice of appeal on June 4, 2014. An appeal was docketed as Case number A15A0561, and the parties filed briefs. However, the case was remanded to the trial court in 2016 with directions to the trial court to prepare a complete appellate record, including the exhibits that were offered at trial. On January 19, 2017, this case was re-docketed under Case number A17A1011.

records relating to a State witness's prior felony conviction that could have been used for impeachment, failing to challenge testimony regarding Child Sexual Abuse Accommodation Syndrome (CSAAS) offered by a State expert, and failing to obtain evidence that could have been used to impeach State witnesses who offered similar-transaction evidence against Tezeno. Finally, he argues that the trial court erred by allowing the State to introduce certain similar-transactions evidence at trial. We hold that the evidence presented by the State was sufficient to support Tezeno's convictions for enticement of a child for indecent purposes and for solicitation of sodomy. However, we find that Tezeno received ineffective assistance of counsel at trial. We therefore vacate his convictions on all counts of the indictment and remand this matter to the trial court for further proceedings consistent with this opinion. We do not reach his final enumeration of error.

On appeal, the defendant "is no longer presumed innocent and all of the evidence is to be viewed in the light most favorable to the jury verdict." *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014) (citation omitted). So viewed, the evidence shows that the victim in this case met and became friends with Tezeno, who was his neighbor. The victim visited Tezeno's house weekly, often with his siblings and other children in the neighborhood, and performed paid yard work for Tezeno.

2

At trial, the victim testified that, on one occasion, he approached Tezeno and told him that he needed money. The victim offered to allow Tezeno to perform oral sex on him in exchange for money. Tezeno accepted this offer. Several days later, the victim came to Tezeno's house and allowed Tezeno to perform oral sex on him in the bedroom. Tezeno gave the victim money the following day. The victim testified that a similar incident occurred about a week later when the victim again needed money. The victim was 14 years old at the time of the incidents, and he testified that Tezeno was aware of the victim's birthday and that he knew how old the victim was and what grade he was in at school.

Several days later, on January 12, 2010, the victim complained of a stomach ache, and his mother took him to the emergency room. While there, the victim also complained of painful urination. While he was awaiting treatment, the victim sent a text message to his mother that said "Mike did something to me." The mother had previously asked the victim if Tezeno had "done something to him," but the victim denied that anything had happened. After further questioning by his mother, the victim indicated that Tezeno "gave him oral sex" on one occasion at Tezeno's home. While still at the hospital, the victim also told a police officer that an adult had

3

performed oral sex on him. The victim also told his treating physician that "Michael" was the person who had performed oral sex on him.

A police investigator with the special victims unit testified regarding a follow-up interview she conducted with the victim after he reported the incidents with Tezeno. The investigator indicated that the victim told her that

> [O]riginally the suspect offered him or solicited to him if he ever needed money he could perform oral sex on him for money. I believe he said several days later he was willing to participate with that, and he said–he told the suspect he wanted to do a run, the "run," which means he wanted to do the oral sex for money. He said it happened twice. The first time he got $15. The second time I just remember him saying he didn't get the money. I'm not sure if the suspect promised him money or not, I just remember him saying he didn't get the money. He said the two incidents happened within a few days apart, and it happened while he was on break from Christmas, at school. He was on Christmas break.

The investigator also indicated that, in his interview with her, the victim identified Tezeno as the person who had performed oral sex on him.

The State also presented testimony at trial from an expert in forensic interviewing who had interviewed the victim after his encounters with Tezeno. In addition to describing the setting and procedure generally for conducting a forensic interview with a child who reports some type of sexual crime, the expert testified

4

regarding her interview of the victim. She noted that the victim seemed nervous, embarrassed, and ashamed during the interview. A video recording of the interview was then played for the jury, in which the victim recalled his encounters with Tezeno. In that interview, the victim indicated to the interviewer that he had told Tezeno that he needed money and that he "would do that for him." The interviewer asked, "You said that he asked you to do something, and then one day you needed some money, and you told him you would do it for the money? What did he ask you to do?" The victim replied, "He told me 'let me give you some oral sex.'" The victim indicated that Tezeno had previously told him that "that was available if you needed some money." The victim then told the interviewer that he later "came up to [Tezeno] and said I needed some money" and that he "wanted to do the run for some money." The victim stated that after he let Tezeno perform oral sex on him he later received $15 from Tezeno. He indicated in the interview that he later let Tezeno perform oral sex on him for a second time but that Tezeno did not pay him on that occasion. Regarding the second act, the victim did not make a specific request for money, but he indicated in his interview that he expected to receive money from Tezeno because "that's what he said before. That's what I was told before. I wasn't doing it just to be doing it."

5

The victim's mother testified that, in the weeks after the victim reported his encounters with Tezeno at the hospital, the victim's behavior changed "drastically." She stated that he had been suspended from school several times for disobedience and fighting, that he withdrew from his friends, and that he became resentful and rebellious. She testified that before these incidents the victim had been outgoing, that he regularly participated in activities and sports with friends, and that he had not been prone to fighting or been suspended from school, although he did regularly skip school.

Following a hearing, the trial court permitted the State to present similar-transactions testimony from three witnesses regarding prior incidents in which Tezeno had been accused of molesting a minor child. The first witness testified regarding a complaint she filed with police after an incident in September 2004 at Tezeno's house where he allegedly "touched" her son "on his private part." The alleged victim was eight years old at the time the incident was reported.

In his testimony before the jury, the alleged victim of this incident stated that Tezeno had touched his penis in the bathroom after Tezeno had been in the shower with him while unclothed. He also testified that, on another occasion, while he was traveling to New Orleans with Tezeno, Tezeno unzipped his pants and began

6

masturbating while he was driving a vehicle. The alleged victim was eight years old when this incident occurred and was seated in the passenger seat of the vehicle while Tezeno masturbated. He also recalled a third incident in which he observed Tezeno masturbating and eventually ejaculating in Tezeno's home. He said that Tezeno knew he could see him masturbating because "we both looked at each other."

The State also called the police detective who had interviewed the mother and the alleged victim to discuss his investigation of the incidents offered as similar transaction evidence. He said that Tezeno denied the allegations made against him but told the detective that he may have "bumped" the alleged victim's penis while helping him dry off after a shower and while applying mineral oil to his body.

The State called, as its final witness, the district attorney's director of forensic services. She was tendered as an expert in forensic interviewing of children and child sexual abuse evaluation and treatment. Tezeno made no objection to her designation as an expert. Her testimony focused on CSAAS, which she stated was based on the theory that a child victim of sexual abuse may display certain characteristics such as secrecy, helplessness, withdrawal, or entrapment that may indicate that the child has been the victim of abuse. She stated that these feelings may lead a child victim to not disclose incidents of abuse, at least in part, because of a fear that he or she may get

7

into trouble. She also stated that children in this situation will "oftentimes . . . begin to act out because in the act of a sexual abuse case, children oftentimes are helpless and do not have that sense of control." She stated that children in these circumstances will often have "issues in school with grades, or teachers, acting out . . . because that is what they can control." She went on to discuss what she described as common child reactions to incidents of sexual abuse, speaking particularly as to how adolescent boys react to such incidents. She also described factors that may lead a child to delay disclosure of incidents of abuse or to forget or omit details about such incidents when reporting them. She also discussed the process of "grooming" whereby a perpetrator of sexual abuse may "get their victim to a place to be okay with the abuse" by slowly building trust.

Tezeno offered only minimal cross-examination of this witness, asking the witness only two substantive questions: "What you have done today is just tell us about child abuse in various types and ways that happen[s] and the ways it gets reported?" and "You have not told us anything else, have you? You have not told us about [the victim]?"

At the conclusion of the expert's testimony, the State rested. After being advised of his rights by the trial court, Tezeno elected not to take the stand or to call any witnesses.

Tezeno was convicted of two counts of aggravated child molestation, two counts of sodomy, one count of enticing a child for indecent purposes, and one count of solicitation of sodomy. Following sentencing, Tezeno moved for a new trial. After a series of hearings,[2] Tezeno's motion for a new trial was denied. This appeal followed.

1. Tezeno first argues that the State did not present sufficient evidence to support his convictions for enticing a child for indecent purposes and solicitation of sodomy. We disagree.

(a) OCGA § 16-6-5 (a) provides that "[a] person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." We find that the evidence presented at trial was sufficient to support Tezeno's conviction on this count beyond a reasonable doubt.

_____

[2] The testimony and other evidence presented at these hearings is discussed in detail in Division 2, *infra*.

The evidence shows that although the victim approached Tezeno with an offer regarding oral sex on two occasions, each of these offers were in response to an earlier offer from Tezeno that he would give the victim money if he would allow Tezeno to perform oral sex on him. Although Tezeno's original offer was apparently made several days before the victim first returned to Tezeno's home seeking money in return for allowing Tezeno to perform oral sex on him, we find these statements to be a sufficient form of solicitation or enticement to support a conviction for this offense.[3] *See Cimildoro v. State*, 259 Ga. 788, 789 (1) (387 SE2d 335) (1990) (asportation element of enticement offense is satisfied if child is persuaded, enticed, or tempted by defendant to move or come to a location for purpose of indecent act); *Kelley v. State*, 301 Ga. App. 43, 45-46 (1) (686 SE2d 810) (2009) (no physical taking is required, and element of enticement satisfied where defendant initiated contact with victim, asked victim to have sexual intercourse with him, offered money to do so, and arranged for victim to come to defendant's home); *cf. Sanders v. State*, 145 Ga. App. 73, 74 (243 SE2d 274) (1978) (conviction reversed where there was "no

---

[3]Though the State concedes that the evidence presented at trial was insufficient to convict Tezeno of this offense , this Court is not bound by either party's assessment of the merits of this appeal nor the application of the case law to the evidence presented at trial.

evidence to support a finding that the victims were enticed, invited to, or in any way persuaded" by defendants to come to their home for purposes of indecent acts). Because the evidence also established that the victim was 14 years old at the time the enticement occurred and because the act of performing oral sex on a 14 year old child satisfies the remaining elements of the offense,[4] there was therefore sufficient evidence for the jury to find that Tezeno committed the offense of enticement of a child for indecent purposes beyond a reasonable doubt.

(b) OCGA § 16-6-15 (a) provides that "[a] person commits the offense of solicitation of sodomy when he solicits another to perform or submit to an act of sodomy." "[A]n individual violates the solicitation of sodomy statute if he (1) solicits another individual (2) to perform or submit to a sexual act involving the sex organs of one and the mouth or anus of the other and (3) such sexual act is to be performed (a) in public; (b) in exchange for money or anything of commercial value; (c) by force; or (d) by or with an individual who is incapable of giving legal consent to sexual activity." *Watson v. State*, 293 Ga. 817, 820 (750 SE2d 143) (2013).

---

[4] *See Craft v. State*, 324 Ga. App. 7, 8 (b) (749 SE2d 16) (2013) (evidence supported conviction for enticement where defendant attempted sexual contact with victim).

11

Here, as with our analysis of Tezeno's conviction for enticing a child for indecent purposes, the record reflects an act of "solicitation" on Tezeno's part. As noted in Division 1 (a), *supra*, although the specific sexual encounters between Tezeno and the victim appear to have been initiated by the victim, the victim's testimony and his forensic interview that was played before the jury show that he initiated those encounters in response to Tezeno's earlier statement that he would give the victim money if he permitted Tezeno to perform oral sex on him. This entreaty by Tezeno satisfies the solicitation element of this offense. *See Watson*, 293 Ga. at 821 (2) (defendant initiated discussions with victim that became sexual in nature and invited victim to engage in acts of sodomy); *Carolina v. State*, 276 Ga. App. 298, 302 (1) (b) (623 SE2d 151) (2005) (defendant offered to give victim money "to make him feel good").

Other evidence in the record establishes the remaining elements of the offense. The victim stated in his testimony that Tezeno offered to perform "oral sex" on him. The victim was not required to elaborate on Tezeno's offer or what he understood Tezeno to be offering. The term "oral sex" is generally understood to mean the stimulation of one's genitals by the mouth of another, and our decisions have afforded the jury some latitude in determining what the words of the specific solicitation mean.

12

*See Anderson v. State*, 142 Ga. App. 282, 283 (1) (235 SE2d 675) (1977) ("[Jurors] can be presumed to have some knowledge of slang expressions in common parlance in the vernacular. It would be completely unrealistic to require that witnesses, many of whom are unlearned or have limited vocabularies, describe the acts constituting the commission of crimes in statutory or technical language in order to prove the commission of such acts.") The record likewise establishes that Tezeno's offer was made to an individual, aged 14, who was incapable of giving legal consent to the solicited act. *Watson*, 293 Ga. at 822. There was therefore sufficient evidence for the jury to find that Tezeno committed the offense of solicitation of sodomy beyond a reasonable doubt.

2. Tezeno next argues that his trial counsel was ineffective in several regards. A defendant's Sixth Amendment right to effective assistance of counsel is violated when his trial counsel's performance is deficient and, but for the deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984). This standard does not require that "a defendant show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693. Thus, even in circumstances where the evidence

13

presented against a defendant is sufficient to support a conviction, the Sixth Amendment guarantees the defendant the right to competent and effective representation. In reviewing a claim of ineffective assistance of counsel on appeal, this Court upholds a trial court's factual findings and credibility determinations unless they are clearly erroneous, but the trial court's legal conclusions are reviewed by this Court de novo. *Goldstein v. State*, 283 Ga. App. 1, 4 (3) (640 SE2d 599) (2006).

(a) Tezeno first argues that the performance of his trial counsel was deficient due to his failure to obtain records of the victim's mother's prior felony convictions and the victim's school disciplinary records. Tezeno argues that such records could have been used to undermine the mother's credibility as a witness generally and to specifically impeach her testimony regarding the victim's behavior following the alleged encounters with Tezeno.

The victim's mother stated in her testimony that, after the incidents with Tezeno, he was suspended several times for disobeying authority and fighting. She further testified that before these incidents, she was not aware of him being involved in fights or being suspended from school.

At the hearing on Tezeno's motion for a new trial, Tezeno's appellate counsel stated that, after the trial, he had obtained records showing that the mother had previously been convicted of theft by receiving stolen property and two counts of forgery in the first degree, all of which are felonies. Appellate counsel also obtained the victim's school records, which showed that he had been suspended from school for a variety of behavioral reasons prior to the incidents involving Tezeno in December 2009. Each of these records were admitted into evidence for purposes of considering Tezeno's motion for a new trial.

At the hearing on Tezeno's motion, his trial counsel testified that he would have introduced evidence of the mother's convictions but that he "didn't know she had any felony convictions." Nothing in the record suggested that trial counsel made any investigation of the mother's criminal record prior to trial. Likewise, trial counsel testified at the hearing that he did not obtain the victim's disciplinary records because his investigator could not locate the victim or his school before trial. The investigator apparently located the victim the day before trial or while the case was being tried, and Tezeno's counsel stated that this left him with no opportunity to get the victim's school records before trial. However, when presented with the materials Tezeno had been provided by the State via pre-trial discovery, he admitted that those records

15

contained the name of a school. He also admitted that neither he nor his investigator went to any school named in discovery in order to obtain the records.

We agree with Tezeno that both failures on the part of his trial counsel to investigate and obtain favorable evidence fell below an objective standard of reasonableness. "[W]hen considering a claim of ineffectiveness, a critical distinction exists between inadequate preparation and unwise trial strategy. *Hudson v. State*, 250 Ga. 479, 486 (8) (299 SE2d 531) (1983). "Especially in matters of trial tactics and strategic choices, an ineffectiveness claim cannot be judged by hindsight or result." *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998). We acknowledge that the tactical decision as to whether or not to present certain evidence for purposes of impeachment, particularly evidence of the witness's prior criminal convictions, generally rests with trial counsel. *Dixon v. State*, 275 Ga. 232, 234 (5) (564 SE2d 198) (2002); *Lewis v. State*, 302 Ga. App. 506, 508 (a) (691 SE2d 336) (2010). In this case, however, the counsel had no opportunity to make such tactical choices because he had not made reasonable efforts to obtain the information in question even though he acknowledged that both pieces of information would have aided Tezeno's defense. *See Douglas v. State*, 327 Ga. App. 792, 795-801 (2) (761 SE2d 180) (2014) ("Counsel's failure to investigate is unreasonable where . . . it resulted from

16

inattention and not from reasoned strategic judgment." (citation omitted)); *Darst v. State*, 323 Ga. App. 614, 618-21 (2) (a) (746 SE2d 865) (2013) (counsel's failure to seek and obtain victim's school, therapy, and Department of Family and Children Services records constituted deficient performance where counsel was aware before trial that relevant (and perhaps favorable) information would likely be contained therein). We therefore agree with Tezeno that his counsel was deficient by failing to make reasonable efforts to obtain these records.

(b) Tezeno next argues that the performance of his trial counsel was deficient due to his failure to adequately challenge the testimony of the State's expert. At the hearing on Tezeno's motion for new trial, his trial counsel indicated that he was personally unaware that the State intended to call its expert witness but later recalled that his co-counsel was going to address her testimony. He further testified that he did not prepare for the expert's testimony because "that was what [co-counsel] was going to do."

Further testimony at the hearing revealed that co-counsel was suffering from a back injury the morning the State's expert was expected to testify and that she was not present for the trial proceedings that day. The record does not reflect any steps taken by Tezeno's trial counsel to alert the court of his co-counsel's absence or to

17

seek an accommodation from the trial court. Instead, counsel listened to the entirety of the expert's testimony and failed to raise any objections to any of the statements made. He then offered only cursory questions during a brief cross examination. He stated in his testimony at the motion hearing that his preparation for the cross-examination was limited to "[thinking] about it on the way in as I was driving down here." He further stated that he conducted the brief cross-examination without notes prepared by his co-counsel, that he had not researched the expert before she testified because "that wasn't what I was concentrating on," that he had not personally conducted any research on CSAAS, and that he did not have any understanding of the syndrome. He indicated that he made no preparations to conduct any voir dire as to the expert's qualifications and stated that "he had no idea what she was talking about" in regard to certain statements made by the witness. He also admitted that a number of statements made by the expert "at the time . . . just flew right over me."[5]

---

[5] Further, when she was tendered as an expert by the State, not only did Tezeno's counsel not object, he replied that "[s]he certainly seems to be an expert to me." Counsel stated in his testimony on Tezeno's motion for new trial that at the time he made this statement he did not think of it as indicating his approval of the State's witness but could, in retrospect see how it could harm Tezeno. While we do not believe that this statement by counsel, in isolation, constituted a deficient performance on his part, we admonish defense counsel to be mindful of everything said on the record and its potential to influence the jury.

Pretermitting whether, as Tezeno suggests, his counsel was deficient in failing to obtain a defense expert that could have aided the defense or been called to the stand to rebut the statements of the State's expert, we find that the performance of Tezeno's trial counsel in addressing the testimony of the State's expert was deficient. As our Supreme Court has noted, and as we discussed in Division 2 (a), *supra*, "[i]n determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy." *Slade*, 270 Ga. at 307 (2). In this case, trial counsel's decision to conduct a cross examination so lacking in depth or probity was admittedly not the result of any strategic choice on his part but was rather based solely on his lack of preparation and lack of knowledge about the witness and the scientific basis of her testimony. Trial counsel's testimony at the hearing on Tezeno's motion for new trial suggests that cross-examination of the witness had been planned and was to be conducted by co-counsel. However, when that co-counsel was unavailable to conduct that examination, Tezeno's counsel did nothing to ameliorate his own inability to adequately confront this witness and instead allowed the witness's testimony before the jury to pass almost completely unchallenged. *See Goldstein*, 283 Ga. App. at 8-9 (finding deficient performance in child sexual abuse case where defense counsel let

19

State's expert testimony pass unchallenged after failing to investigate medical issues discussed by expert).

What is perhaps most striking about counsel's performance is that our cases do not create a high bar for overcoming claims of ineffectiveness as they relate to challenging testimony by a State expert. *Goldstein* suggests that expert testimony offered by the defense may be necessary in some circumstances to adequately challenge the State's experts. *See Goldstein*, 283 Ga. App. at 8-9 (noting that the State presented multiple experts who were unrebutted by the defense). However, with regard to CSAAS testimony specifically, cross-examination that probes potential limitations of CSAAS may be sufficient to overcome a claim that the trial counsel's performance was deficient in regard to the State's expert. *See Hunt v. State,* 336 Ga. App. 821, 830-31 (4) (783 SE2d 456) (2016). In *Hunt*, the State called an expert to testify regarding CSAAS. *Hunt*, 336 Ga. App. at 830 (4). The witness did not relate her testimony to the specific victim in the case, instead testifying as to five categories of CSAAS: secrecy, helplessness, entrapment and accommodation, delayed and unconvincing disclosure, and retraction. *Id*. at 830 (4). On cross-examination, defense counsel elicited the witness's admission that "even though a child who has experienced molestation may remain secret, the lack of a disclosure by a child is also

consistent with the defendant's innocence." *Id*. On that basis, this Court found no deficiency in the counsel's performance, noting that it was unable to "conclude that no competent attorney would have relied on cross-examination alone to rebut the testimony about [CSAAS] in this case." *Hunt*, 336 Ga. App. at 831 (4).

In sharp contrast, here not only did Tezeno's trial counsel fail to offer even minimal challenges to the expert's testimony by offering objections or probing questions in cross-examination, he clearly had made no preparations to do so. Neither did he take any steps to ensure that the expert's testimony could be delayed so that a more prepared and knowledgeable attorney could be present for the witness's testimony. Nothing in the record suggests that his decision not to seek any delay or continuance, to minimize objections, or to conduct only cursory questioning of the expert were the product of strategic choices or that such any such choices would have been reasonable under the circumstances of this case. We therefore agree with Tezeno that his counsel's performance in addressing the State's expert witness was deficient.[6]

---

[6] At the hearing on his motion for a new trial, Tezeno presented testimony from an expert witness who stated that the professional literature surrounding CSAAS has, since the theory's first publication in 1983, criticized the use of the CSAAS framework as a diagnostic tool. The witness explained that subsequent literature on the subject has indicated that the framework was not intended to be used in such a way as to confirm that someone exhibiting behaviors consistent with CSAAS had in fact been abused. Because we need not and do not reach questions in this case

21

(c) Tezeno next argues that the performance of trial counsel was deficient due to his failure to impeach the testimony of the alleged victim who presented similar-transactions evidence against Tezeno. At the hearing on Tezeno's

motion for new trial, his trial counsel stated that he had previously represented Tezeno in the prior case involving the witnesses who alleged prior acts of molestation by Tezeno. Counsel recalled that, in a video of the alleged victim's statement to police regarding his allegation that Tezeno had masturbated in front of him, the victim did not indicate that he had been molested. At the motion hearing, counsel stated that he believed that the contents of that interview would be exculpatory to Tezeno regarding the similar transactions evidence. However, in preparation for trial,

---

regarding the need for defense counsel to have hired consulting or testifying experts to confront testimony regarding CSAAS presented by the State, we also have no need to elaborate on the merits of CSAAS or standards that should apply to its use by the State in criminal cases generally. Our holding in this case regarding the performance of Tezeno's counsel relative to the State's expert witness is strictly based on counsel's lack of preparation and his minimal efforts to confront the witness. We therefore express no opinion regarding the validity or merits of the scientific theory the State's expert expounded in her trial testimony. Nor do we in any way address the admissibility of CSAAS testimony generally, as other decisions of this Court have addressed those issues in the context of specific cases. *See, e.g., Haithcock v. State*, 320 Ga. App. 886, 888-89 (2) (740 SE2d 806) (2013); *Hall. v. State*, 196 Ga. App. 523, 524-526 (2)-(3) (396 SE2d 271) (1990) (discussing admissibility and use of evidence regarding CSAAS by State at trial).

22

he did not request that a video of that interview be made available to him or seek a continuance in order to obtain it.

A copy of the video was obtained and played before the trial court and Tezeno's counsel at the hearing on the motion for new trial. After viewing the video, Tezeno's trial counsel admitted that the tape would have helped him impeach two of the witnesses who offered similar-transaction evidence against Tezeno by suggesting that the alleged victim only made certain allegations against Tezeno well after giving the interview captured by the video. However, counsel offered no strategic reason for failing to request this video from the State before trial.

As with the other deficiencies claimed by Tezeno in this appeal, this failure was not the product of reasoned strategy. As we noted, *supra*, our cases do not require a defense lawyer to present impeachment evidence that might undermine the claims of a witness when the lawyer chooses not to do so for strategic reasons. *See Dixon*, 275 Ga. at 234 (5). In this case, however, Tezeno's trial counsel was aware of such evidence, considered it potentially valuable to his case, yet made no effort to obtain it from the State. He pointed to no reason why he could not have made these efforts or why he elected not to do so. We therefore agree with Tezeno that his counsel was

deficient by failing to make reasonable efforts to obtain the recording of this interview before trial. *See Douglas*, 327 Ga. App. at 796.

(d) In light of our finding of multiple deficiencies in the performance of Tezeno's counsel, we must also consider whether there is a reasonable probability that the outcome of the trial would have been different, absent the deficient performance. As this Court has previously discussed,

> When a defendant establishes that trial counsel's performance was deficient in more than one respect, the court's determination of whether he or she was prejudiced thereby requires consideration of the collective effect of the deficiencies. The combined effects of counsel's errors should be considered together as one issue with regard to the prejudice test. It is the prejudice arising from counsel's errors that is constitutionally relevant, so each individual error by counsel should not be considered in a vacuum.

*Darst*, 323 Ga. App. at 618 (2) (citations and punctuation omitted). In this case, we agree with Tezeno that there is a reasonable probability that the outcome of his trial would have been different absent his counsel's deficient performance.

Because there were no eyewitnesses to the alleged incidents other than Tezeno and the victim, taking steps to support the credibility of the victim and explain and contextualize his reactions to these incidents were key facets of the State's trial

24

strategy. The State attempted to accomplish this by presenting witnesses who described the victim's initial reporting of the incidents with Tezeno, as well as expert testimony to aid the jury in understanding how child victims of sexual abuse commonly respond to such incidents.

Because the defense did not make any claim that the defendant had been misidentified or that someone else committed the alleged acts against the victim, its only strategy was to completely deny that the acts occurred and, in so doing, attack the credibility of the victim and the State's other witnesses. Tezeno's trial counsel acknowledged as much when, at the hearing on Tezeno's motion for a new trial, he confirmed that his defense strategy was to argue to the jury that the victim was not telling the truth when he first made his allegations against Tezeno and that he continued to lie throughout the investigation.

However, the unimpeached and unrebutted testimony of the mother and the State's expert allowed the State to directly counter the defense's strategy by addressing a number of issues relating to the victim's credibility, including why he did not tell his mother sooner that the incidents with Tezeno occurred. Moreover, because the mother's testimony regarding the victim's subsequent change in behavior was not challenged by the introduction of the victim's school discipline records, the

25

jury was never offered any meaningful evidence by the defense that the mother's statements regarding the victim's behavior might be erroneous or, at a minimum, a mischaracterization of the victim's disciplinary history.[7] With the mother's unimpeached testimony regarding the victim's change in behavior before the jury, the State then had a clear path, through its expert, to emphasize the victim's delayed disclosure and negative change in behavior as reactions that were common among male children who were victims of sexual abuse. The State referred to the testimony of the mother and the expert numerous times in its closing argument, both as a specific rebuttal to the defense's theory that the victim fabricated the entire story against Tezeno and by way of explaining the victim's delayed disclosure of these events to his mother and his subsequent change in behavior. *See Douglas*, 327 Ga. App. at 801 (2) (B) (iii) (noting that, where State emphasizes credibility of witnesses in closing argument, trial counsel's deficient failure to impeach such witnesses weighs against finding harmless error despite strong evidence of guilt).

---

[7] Tezeno's trial counsel attempted only a brief line of cross-examination of the mother in regard to the Victim's pre- and post-incident behavior. That questioning was limited to asking whether the mother was aware that the victim had skipped school on several occasions before the incidents with Tezeno and whether her testimony was limited to the behaviors she observed after the incidents were reported.

Had the victim's reactions, as related primarily through the mother's testimony, been called directly into question, and had the defense made any effort to draw out limitations in the research on which the State's expert offered her testimony, there is a reasonable probability that the outcome of this trial would have been different. *See Douglas*, 327 Ga. App. at 801 (2) (B) (iii); *Goldstein*, 283 Ga. App. at 8-9 (2) (b); *see also Fedak v. State*, 304 Ga. App. 580, 585 (1) (696 SE2d 421) (2010) ("Although the [omitted] testimony would not have required a jury to acquit [the defendant], his burden here is to show only a reasonable probability of a different outcome, not that a different outcome would have been certain or even more likely than not." (citations, punctuation, and footnotes omitted)). Due to the compounding nature of the errors made by Tezeno's trial counsel and the weighty evidence such errors permitted the jury to hear largely unchallenged, we find that his counsel's assistance was ineffective. We so rule "particularly because he inexplicably failed to present evidence . . . that bears on several important issues and which could have changed the outcome of the trial." *Goldstein*, 283 Ga. App. at 1. Because Tezeno received ineffective assistance of counsel at trial, each of his convictions must be vacated, and this case must be remanded to the trial court for further proceedings consistent with this opinion.

3. As we vacate Tezeno's conviction on other grounds, we need not reach the merits of his enumeration in regard to the trial court's admission of similar-transaction evidence.

*Judgment vacated and case remanded. McFadden, P. J., and Branch, J., concur.*